# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:05CV141-H

| | |
|---|---|
| EDDIE B. LITTLE,         )<br>         Plaintiff,         )<br>                                )<br>         vs.                   )<br>                                )<br>JO ANNE B. BARNHART,  )<br>Commissioner of Social     )<br>Security Administration,   )<br>         Defendant.         )<br>                                )  | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" and "Memorandum [in Support]" (both document #8) filed September 30, 2005; and Defendant's "Motion For Summary Judgment" (document #9) and "Memorandum in Support of the Commissioner's Decision" (document #10), both filed November 17, 2005.  The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence.  Accordingly, the undersigned will <u>deny</u> Plaintiff's Motion for Summary Judgment; <u>grant</u> Defendant's Motion for Summary Judgment; and <u>affirm</u> the Commissioner's decision.

## I. <u>PROCEDURAL HISTORY</u>

On August 22, 2003, the Plaintiff filed an application for Social Security Disability benefits ("DIB") and Supplemental Security Income ("SSI"), alleging he was unable to work as of March 2,

2002 due to "[his] pancreas, gout, [and] hypertension." (Tr. 127.)  The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on September 29, 2004.  At the hearing, the Plaintiff amended his alleged onset date to July 1, 2003.[1]  On November 15, 2004, the ALJ issued a decision denying the Plaintiff's claim.    The Plaintiff filed a timely Request for Review of Hearing Decision.  On February 25, 2005, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on March 31, 2005, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

The Plaintiff testified that he was born on September 25, 1958, and was 46 years-old at the time of the hearing; that he lived with his sister; that he had a driver's license; that he had completed the ninth grade, but had dropped out of high school sometime during the tenth grade to begin working; that he had a variety of work experience in the logging industry, that is, as a pulpwood truck loader, a skid operator, and a chainsaw operator; that he had other experience as a forklift operator; that he owned a car; and that he received food stamps and was on Medicaid, which covered his prescriptions.

Regarding his medical and emotional condition, the Plaintiff testified that he suffered hypertension, gout, stomach pain, diabetes, and pancreatitis; that he had difficulty walking, sitting, and standing for prolonged periods due to dizziness and stomach pain; that he was a recovering

---

[1]The parties agree that Plaintiff had filed a previous application, that was denied at the reconsideration level, that Plaintiff did not appeal, and that, therefore, acted as res judicata as of that date.

alcoholic; that his medical condition did not improve after he stopped drinking; that he was able to monitor his blood sugar; that he took Humulin and Lantus for diabetes; that "at times ... [he] constantly ha[d] to go to the bathroom"; that he had weighed as little as 94 pounds 18 months earlier before he stopped drinking alcohol; that he weighed 130 pounds on the day of the hearing and was eating regularly; and that he could lift 25 pounds.

As to daily activities, the Plaintiff testified that he got out of bed at 8:00 a.m., lay down for a nap at noon, and went to bed each night no later than 11:00 p.m.; that he spent most of each day playing computer games (two to three hours per day) and watching television (eight hours per day); that he also read the newspaper and worked puzzles; that he walked outside each day and drove a car; that he went shopping; that he no longer pursued his former hobby of fishing because of dizziness; that his sister performed all household chores; that three to four times each week, he would go to a friend's house to play cards; and that he attended church weekly.

The Plaintiff's sister, Bobbie Jean Little, testified that she saw the Plaintiff two to three times each week; that the Plaintiff complained about stomach pain and feeling weak; that the Plaintiff was taking insulin; and that the Plaintiff often vomited and had difficulty eating.

A Vocational Expert ("VE") classified the Plaintiff's prior work experience as heavy unskilled (logging) and medium semi-skilled (forklift driver).

The ALJ then gave the VE the following hypothetical:

> same age, education, and work background [as the Plaintiff] ... are there any jobs at the light exertional level that would accommodate ... a sit/stand option and work that would be low stress, low production work ... not fast paced production ... only the performance of simple routine repetitive tasks?

(Tr. 57.)

The VE testified that with these limitations, the Plaintiff could work as a parking lot

attendant, a sorter, and a gluer; and that 2,542 of these unskilled jobs were available in North Carolina.

The record also contains a number of representations by Plaintiff as contained in his various applications in support of his claim. On a Disability Report, dated August 26, 2003, Plaintiff stated that he was unable to work because of problems with his "pancreas, gout, [and] hypertension" (Tr. 127); and that he was "too weak" to work. The Agency interviewer who took the report in person noted that the Plaintiff had no difficulty sitting, standing, walking, seeing, using his hands, writing, hearing, reading, breathing, understanding, thinking coherently, concentrating, talking, or answering.

On October 8, 2003, the Plaintiff's sister, Ms. Little, completed a Function Report Adult-Third Party, stating that the Plaintiff was able to bathe and dress himself "ok"; that Plaintiff made his bed and took out the trash; and that Plaintiff shopped for his food, clothes, and medicine, and was able to pay his bills, use a checkbook, and count change; that the Plaintiff went to church; and that the Plaintiff had no difficulty getting along with other people.

On a Reconsideration Disability Report, dated November 19, 2003, Plaintiff stated that his condition was unchanged; that his doctor had not restricted his activities; that he had no additional illnesses; and that he had no difficulty caring for his personal needs.

The Plaintiff's records from the Anson County (North Carolina) School System reflect that Plaintiff had an IQ in the range of 92-95 and that he dropped out of school during the tenth grade.

On an undated Claimant's Statement When Request for Hearing is Filed and the Issue is Disability, the Plaintiff stated that his condition had worsened.

On November 5, 2003, Brett Fox, Psy.D., completed a Psychiatric Review Technique and concluded that the Plaintiff had "borderline-low average" intelligence and abused alcohol, which had

a "moderate," that is, a non-disabling impact on his abilities to function socially and to concentrate, but no more than a mild effect on his activities of daily living; but that the Plaintiff had never suffered a episode of "decompensation" for an extended period.

The same day, Dr. Fox completed a Mental Residual Functional Capacity Assessment, concluding that Plaintiff had moderate limitations on his abilities to understand, remember, and carry out detailed instructions, to concentrate for extended periods, to work within a regular schedule, to work a normal work week, to interact with the public, to accept criticism from supervisors, and to respond to changes in the work environment; but that the Plaintiff had no limitations on his abilities to remember work locations and procedures, to understand, remember, and carry out simple instructions, to sustain an ordinary work routine, to work with others, to make simple work-related decisions, to ask questions, to behave appropriately at work, or to set realistic goals.

On November 6, 2003, B.B. Blackmon, M.D., completed a Physical Residual Functional Capacity Assessment, noting that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; and that he should avoid frequent balancing, kneeling, crouching, stooping, or crawling, more than occasional climbing of ramps and stairs, and concentrated exposure to hazardous machinery. After reviewing the Plaintiff's medical chart, Dr. Blackmon stated that Plaintiff had good muscle tone and range of motion; that Plaintiff suffered pancreatitis secondary to alcoholism; that there were no symptoms of gout; that although Plaintiff had claimed to suffer high blood pressure, he was not seeking treatment for that condition; and that he had the residual functional capacity for medium work with the nonexertional limitations previously described.

The parties have not assigned error to the ALJ's recitation of the medical records (presented to the ALJ at or after the hearing). Moreover, the undersigned has carefully reviewed the Plaintiff's medical records and finds that the ALJ's recitation is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> The medical records show that the claimant's medical care has been followed by Dr. George Butler. He reported having a history of gout and in September 2001 he had an episode of foot pain which was presumed to be due to gout, and was prescribed Motrin. Treatment notes also show that at that time he had uncontrolled hypertension secondary to noncompliance with medication. At the time of that visit the claimant weighed 147 pounds. When the claimant followed up a week later his hypertension was controlled and his foot pain was better, but he reported that he had not been able to afford the Motrin. Exhibit 3F.
>
> On November 5, 2002, the claimant underwent a disability examination with Dr. Floyd Deen, Jr. He reported having a history of gout in his feet since February 2002, with pain in the top of his feet and swelling on occasion. He stated that he was unable to stand or walk for any prolonged period of time due to this pain. Mr. Little reported a two year history of hypertension, treated with medication for a year. He stated that his prescribed medications included ibuprofen, potassium chloride, propanolol, HCTZ, and Clonidine, but that he was not taking any of these medications for several months due to lack of funds. He admitted to drinking beer and liquor on the weekends but was vague about the amount. Mr. Little weighed 120-1/2 pounds, reported having lost 30 pounds over the previous 10 months, and complained of chronic weakness and easy fatigability. He stated that he had occasional headache, occasional vertigo, occasional lower extremity edema, some dyspnea with moderate exertion, and occasional nausea, vomiting, diarrhea, and abdominal pain. On examination he had good grip bilaterally, good muscle tone, and good range of motion in the upper and lower extremities without any obvious deformity. His blood pressure was 150/92 and he demonstrated 4/5 strength in the upper and lower extremities. Dr. Deen stated that the claimant was able to sit, stand, move about, lift, carry and handle objects, hear, speak, and travel, but that he may not be able to engage in intense physical activities requiring prolonged standing and walking. He noted that the claimant had a history of gout which was presently asymptomatic, ataxia of unknown etiology, and hepatomegaly, suspected to be due to alcoholism. Exhibit 4F.
>
> The claimant next saw Dr. Butler July 2, 2003. He weighed 104 pounds and complained of abdominal pain and inability to keep anything down. He was not taking his medications. He went to the emergency room the next day after becoming very weak and dizzy and was hospitalized July 3-15, 2003, for treatment of

pancreatitis, pancreatic pseudocyst, gastric outlet obstruction, and alcohol abuse. He reported having had a 40 pound unintentional weight loss over the prior six months. Following treatment the claimant was discharged for alcohol rehabilitation. Exhibits 3F, 4F.

The claimant developed diarrhea while at rehab and was hospitalized July 31, 2003 - August 11, 2003, with acute renal failure secondary to dehydration and diarrhea, malnutrition, acute pancreatitis, and urinary tract infection. The record shows that this hypertension was resolved off alcohol. When the claimant was released he was doing extremely well and was able to tolerate oral medications without abdominal pain, nausea, vomiting, or diarrhea. He was started on a low fat diet, given pancrease and stress tabs, and was discharged home in improved condition. It was anticipated that he could return to normal functioning if he remained abstinent from alcohol. Exhibit 5F.

The claimant followed up with Dr. Butler on August 20, 2003, and was doing well. Treatment notes in September 2003 show that the claimant had gained weight and weighed 116 pounds. Dr. Butler noted on November 10, 2003, that the claimant weighed 125 pounds and was compliant with his medications. The claimant denied recent vomiting and continued abstinent from alcohol. Exhibit 3F.

On September 24, 2003, the claimant underwent a psychological assessment with David J. Wheeler, Ph.D. He reported a weight loss from 160 pounds to under a hundred pounds and that he had lost energy and was too weak to continue with his job. He stated that he had been hospitalized during the summer due to problems with his appendix and that his appetite had improved on medication. He denied symptoms of anxiety, depression, obsessions, or psychosis and denied having problems sleeping. He stated that on a typical day he was up around 6:00 a.m. and in bed by 9:00 p.m. He said that he spent his day walking around the neighborhood and visiting with friends, watching television, solving word puzzles, playing solitaire on the computer, and playing pool with friends. He reported that he tried to keep his room clean but rarely did any other domestic chore. Dr. Wheeler estimated the claimant's intelligence to be in the low average to borderline range and assessed the claimant with a global assessment of functioning of 50. He stated that the claimant could maintain concentration, persistence, or pace for a few hours but might struggle to do so over the course of a typical workday. He noted that the claimant could interact with peers, coworkers, or supervisors in an adequate way. Dr. Wheeler wrote that the claimant's posture, gait, and movements were within normal limits and his motor activity was subdued. Although he did not perform a physical examination, Dr. Wheeler stated that the claimant appeared to be physically unable to perform simple routine or repetitive tasks. Exhibit 6F.

The claimant underwent another disability examination with Dr. Deen on October 13, 2003. He reported having hypertension for five years and said that he was taking

medications but was currently out of medication. Dr. Deen noted that the claimant had no signs of hypertension on the day of the examination. The claimant reported that he had gained 18 pounds since his discharge from the hospital on September 3, 2003, and had a good appetite and less nausea. He reported edema of both feet intermittently, usually associated with gout attacks, and occasional myalgias and arthralgias. The claimant stated that he had frequent urination and a history of prostatic cancer. On examination the claimant weighed 113 pounds and his blood pressure was 125/68. The claimant had 20/20 uncorrected vision in his right and left eyes. His liver was enlarged. He had good range of motion in the upper and lower extremities and negative straight leg raising. His grasp was near normal at 4+/5. Dr. Deen stated that the claimant may not be able to be engaged in a responsible position due to his history of alcoholism and that he probably could not maintain high intensity labor or any activity due to his history of chronic weakness secondary to alcoholism. Exhibit 7F.

In December 2003 the claimant saw his physician with complaints of left knee pain. Examination revealed normal range of motion and mild tenderness of the left knee and he was treated with anti-inflammatory medication. In January 2004 the claimant saw Dr. Butler for a routine follow-up and to complete a form for food stamps. He reported frequent urination and his fasting blood sugar was 250 mg/dl. He began treatment with Glucotrol for diabetes mellitus and Dr. Butler noted that the claimant would eventually need insulin for his diabetes. Treatment notes show that the claimant's hypertension was controlled. The claimant had a recurrence of abdominal complaints on February 12, 2004, and an abdominal ultrasound demonstrated findings suggesting chronic pancreatitis, evidence of a solitary gallstone, and probably fatty deposition within the liver. His weight was 116 pounds. When the claimant returned to the office on February 16, 2004, his symptoms had resolved and he had no vomiting, diarrhea, or abdominal pain. The claimant reported that his fasting blood sugar was 135 mg/dl and that he had not resumed his diabetic diet. On follow-up February 25, 2004, his weight was 116 pounds. He was doing well and was compliant with his medications. Exhibit 3F.

In response to a request for opinion sent on September 21, 2004, Dr. Butler stated that the claimant was not capable of sedentary employment due to brittle diabetes mellitus, visual impairment, chronic pancreatitis, pancreatic insufficiency, recurrent abdominal pain, history of gastric outlet obstruction, marked weight loss, and fatigue. Exhibit 8F....

The claimant reported to Dr. Wheeler that he had been hospitalized for problems with his appendix and told Dr. Deen that he had a history of prostatic cancer, but the medical record does not show any treatment for these impairments....

Although the claimant was hospitalized with acute pancreatitis with associated weight loss, the record shows that he has regained most of the weight he had lost and

has a good appetite. Dr. Butler's records show that the claimant's reported foot pain improved within a few weeks in September 2001, without medication and he had no medical care between September 2001 and July 2003. When he was hospitalized in July 2003 he had not been taking his medications and suffered symptoms associated with alcohol abuse. Following his treatment in rehab and a recurrence of diarrhea the claimant did well with oral medications. The record shows that his hypertension resolved off alcohol. In November, with medication compliance, the claimant had no recurrence of symptoms. He had no further abdominal complaints until February, which resolved with treatment. The claimant's left knee pain did not limit range of motion and was treated with anti-inflammatory medication with no follow-up treatment. Dr. Butler's records show that the claimant began treatment for diabetes in January 2004 with oral medication. He stated that the claimant would eventually need treatment with insulin but his records do not show that the claimant was treated with insulin. The records show, however, that the claimant had discontinued following a diabetic diet in February 2004.

(Tr. 14-18.)

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that the Plaintiff appeals.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler,

782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[2] The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
  inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

relevant to the decision; that the Plaintiff suffered "chronic pancreatitis, pancreatic insufficiency, history of alcoholism, hypertension, and diabetes mellitus," which were severe impairments within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that the Plaintiff had the residual functional capacity for light work[3] with a sit/stand option, involving low stress, low production, and simple, routine, repetitive tasks; that Plaintiff was unable to perform his past relevant work; and that the Plaintiff was a "younger individual" with a "limited education."

The ALJ then correctly shifted the burden to the Secretary to show the existence of other jobs in the national economy which the Plaintiff could perform. The VE's testimony, stated above and based on a hypothetical that factored in the limitations discussed above, provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform.

The Plaintiff essentially appeals the ALJ's determination of his residual functional capacity ("RFC"). See Plaintiff's "Motion for Summary Judgment" and "Memorandum [in Support]" (both document #8). However, the undersigned finds that there is substantial evidence supporting the ALJ's finding concerning the Plaintiff's residual functional capacity.

The Social Security Regulations define "residual functional capacity" as "what [a claimant]

---

[3]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

11

can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited his ability to work. Agency medical evaluators found that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; and that he should avoid frequent balancing, kneeling, crouching, stooping, or crawling, more than occasional climbing of ramps and stairs, and concentrated exposure to hazardous machinery; but that with these nonexertional limitations, he had the residual functional capacity for medium work. Agency psychological evaluators found that Plaintiff's mental and emotional impairments, which were in large part attributable to his alcoholism, were <u>not</u> disabling and had no more than a moderate impact on his ability to function.

The ALJ found the Plaintiff not disabled, however, based on a residual functional capacity for light work with a sit/stand option, involving low stress, low production, and simple, routine, repetitive tasks. In other words, the ALJ concluded that the Plaintiff had a <u>lower</u> residual functional capacity than reviewing experts concluded was supported by the objective medical record, including making a significant allowance for the Plaintiff's alleged mental and emotional difficulties – in the form of low stress, low production jobs requiring no more than simple, routine, repetitive tasks – even though Agency experts concluded that Plaintiff's "borderline to low average" intelligence and alcoholism had little, if any, impact on his ability to work.

The Plaintiff assigns error to the ALJ's treatment of Dr. Butler's January 2004 opinion that the Plaintiff was unable to perform even sedentary work and was, therefore, disabled. The undersigned concludes, however, that the ALJ's treatment of that opinion was supported by substantial evidence.

The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

At the outset, as the ALJ correctly noted, Dr. Butler's opinion that the Plaintiff could not perform even sedentary work is contradicted by the Plaintiff's testimony at the hearing that he could, in fact, lift 25 pounds. Moreover, Dr. Butler failed to state any specific restrictions on Plaintiff's ability to sit, stand, walk, lift, push/pull and engage in postural activities that would have supported his opinion that the Plaintiff could not perform sedentary work.

To the contrary, on September 5, 2001, Dr. Butler did not record any physical limitations resulting from Plaintiff's conditions. The following week, Dr. Butler concluded that Plaintiff's overall condition had improved. On August 20, 2003, after the Plaintiff evidently had stopped drinking, Dr. Butler reported that the Plaintiff was doing better, that is, that he was gaining weight.

13

On November 10, 2003, Dr. Butler noted that Plaintiff had gained even more weight, was not drinking, and was compliant with his medication. After a February 25, 2004 follow up visit, Dr. Butler noted that Plaintiff was "doing well" so long as he remained compliant with his medications.

Rather than proving the existence of a disability, the substantial evidence in the medical record clearly supports the ALJ's essential conclusion: that the Plaintiff suffered from – but was not disabled by – chronic pancreatitis, pancreatic insufficiency, history of alcoholism, hypertension, and diabetes mellitus. Indeed, the undisputed medical records, recited above, reveals that Plaintiff's pancreatitis, pancreatic insufficiency, gastric outlet obstruction, abdominal pain, hypertension, and weight loss had resolved, particularly after the Plaintiff stopped abusing alcohol in Summer 2003; that his vision in both eyes was 20/20 uncorrected; that in 2004, he failed to comply with Dr. Butler's recommendation to remain on a diabetic diet; and that the Plaintiff's diabetes never became so serious as to require insulin injections. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

In other words, while Plaintiff had been hospitalized for weight loss and acute pancreatitis, his medicals records show, and the Plaintiff admitted, that by the time of the hearing, he had regained much of the weight he had lost and currently had a good appetite. The Plaintiff's foot pain improved within a few weeks, without medication, and his left knee pain only required treatment with anti-inflammatory medication and did not limit his range of motion.

The record also establishes that the Plaintiff engaged in significant daily life activities, such

as bathing and dressing himself, making his bed and taking out the trash, driving, visiting friends and playing cards, going shopping, watching television, playing computer games, and paying his bills. On the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff performed "wide range of house work" which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was <u>not</u> fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's chronic pancreatitis, pancreatic insufficiency, history of alcoholism, hypertension, and diabetes mellitus – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in <u>Craig</u>. However, the ALJ also correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," and found Plaintiff's subjective description of his limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." <u>Mickles</u>, 29 F.3d at 921, citing <u>Hunter v. Sullivan</u>, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and his objective ability to carry on a moderate level of daily activities, that is, Plaintiff's ability to take care of his personal needs, to perform some household chores, to take daily walks, play computer games, solve word puzzles, read, watch television, play cards with friends, and visit with neighbors, as well as the objective evidence in the medical record, discussed above.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by

his combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." <u>Mickles</u>, 29 F.3d at 923, <u>citing</u> <u>Simmons v. Bowen</u>, 834 F.2d 635, 640 (7th Cir. 1987). This is such a case, as it contains substantial evidence to support the ALJ's determinations of the Plaintiff's residual functional capacity.

## V. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. "Plaintiff's Motion For Summary Judgment" (document #8) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #9) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED, AND DECREED.**

**Signed: November 21, 2005**

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge